O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

LEONARD J. PORTO III            )     Case No. SACV 12-0501-DOC (MLG)
                                )
        Plaintiff,              )     REPORT AND RECOMMENDATION OF
                                )     UNITED STATES MAGISTRATE JUDGE
        v.                      )
                                )
CITY OF LAGUNA BEACH, et al.,   )
                                )
        Defendants.             )
                                )
                                )

**I.    Background**

   **A. Procedural History**

   Plaintiff Leonard J. Porto III filed this pro se First Amended Complaint ("Am. Compl.") on September 28, 2012.[1] Plaintiff alleges various federal causes of action under the United States Constitution pursuant to 42 U.S.C. § 1983 against the following entities and individuals: the City of Laguna Beach ("the City"); Laguna Beach Police Department Chief Paul Workman and Officers Jason Farris, Matt

---

[1] Plaintiff's original complaint was filed on April 2, 2012. Defendant filed a motion to dismiss and on August 7, 2012, this Court issued a report recommending that several of Plaintiff's claims be dismissed with prejudice and ordering that the remaining claims be dismissed with leave to amend. Plaintiff filed an objection on August 27, 2012. On September 4, 2012, District Judge David O. Carter adopted the Report and Recommendation in full.

Gregg, Greg Hiler, Luke Gilbertson, individually and in their official capacities; John Pietig, individually and in his official capacity as City Manager; and Does 1-10. Plaintiff also alleges a state law claim for a violation of the California Public Records Act.

As in the original complaint, Plaintiff claims that Defendants' practice of citing homeless persons for sleeping in public violates his constitutional rights. He also claims that the policies adopted for the operation of the City's homeless shelter, the Alternative Sleeping Location ("ASL"), which require guests to sign a liability waiver and demonstrate residency in Laguna Beach, are unconstitutional. Plaintiff alleges that his rights were violated when he was denied access to the ASL.

On October 10, 2012, Defendants filed a motion to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief may be granted under the laws or Constitution of the United States. Plaintiff filed an Opposition, and Defendants filed a Reply. The motion to dismiss is ready for decision.

**B. Facts**

**1. The Anti-Camping Ordinance**

Laguna Beach, Cal., Code § 8.30.030 ("the Anti-Camping Ordinance") prohibits: 1) camping in any public area; and 2) sleeping in any public park or beach at night or any public street or building at any time. Plaintiff alleges that Defendants issue citations under the Ordinance as well as under Cal. Penal Code § 647(e) to homeless persons for sleeping in public in order to harass them and encourage them to leave Laguna Beach. (Am. Compl. at 6.)

//

1    Plaintiff alleges that he became homeless sometime in early
2   2010, and that since then he has been sleeping in his vehicle. He
3   claims that on September 1, 2012, he was cited by Officer Hiler for
4   a violation of the Anti-Camping Ordinance. It should be noted
5   however, that the "citation" states on its face that it is a
6   "courtesy notice" and not a citation. (Am. Compl. at 7-8; Doc. 30 Ex.
7   Q.) Plaintiff claims that he has been warned by Police Officers
8   Farris and Greg that he would be cited if he were found sleeping in
9   his vehicle; that he was awakened by Officer Gilbertson one night
10  while sleeping on a public bench; and that on two occasions an
11  unknown police officer shone a light inside Plaintiff's vehicle while
12  he slept inside. (Am. Compl. at 7-8.) Plaintiff claims that he sleeps
13  in constant fear and anxiety of being awakened by police. (Am. Compl.
14  at 8.)

15           **2. The Alternative Sleeping Location**

16    After he became homeless in early 2010, Plaintiff began using
17  the ASL for laundry, showers, and meals. However, he was prohibited
18  by ASL staff members from sleeping at the ASL due to his failure to
19  meet the ASL's local residency requirements. (Am. Compl. at 4.) He
20  claims that he is currently unable to satisfy the ASL's residency
21  requirements due to Officer Farris's failure to place him on a
22  "locals list." (Am. Compl. at 8.)

23    Additionally, on October 25, 2010, and on two other occasions,
24  while at the shelter, he was given a form titled "Registration and
25  Rules" containing a liability waiver and rules related to use of the
26  ASL. (Compl. at 4; Doc. 20, Ex. J). When Plaintiff refused to sign
27  the form due to his objections to the liability waiver, he was
28  ordered to leave by ASL staff. (Am. Compl. at 5.)

## II.  **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief may be granted." To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

In considering Defendants' Motion to Dismiss, the Court must accept all factual allegations of the complaint as true and construe those facts, as well as the inferences from those facts, in the light most favorable to Plaintiff. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citations omitted). However, the liberal construction doctrine "applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). The Court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Ileto*

4

1  *v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western*
2  *Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

3
4  **III.  <u>Discussion</u>**
5      **A.  42 U.S.C. § 1983**
6        Section 1983 provides a cause of action against any "person"
7  who, under color of law, deprives an individual of federal
8  constitutional or statutory rights. 42 U.S.C. § 1983; *see also West*
9  *v. Atkins*, 487 U.S. 42, 48 (1988). The term "person" in section 1983
10 includes local governmental bodies. *Cortez v. Cnty. of Los Angeles*,
11 294 F.3d 1186, 1188 (9th Cir. 2002). Plaintiff alleges numerous
12 violations of his federal constitutional rights, which can be
13 categorized generally as: (1) claims based on the enforcement of
14 Laguna Beach, Cal., Code § 8.30.030, prohibiting sleeping in public,
15 (2) the claim that his "privacy" and "seclusion" was intruded upon
16 while in his vehicle; and (3) claims based on his denial of access
17 to the ASL. He further alleges that the City failed to train the
18 City's Police Officers and ASL staff in proper treatment of the
19 homeless.

20         **1.  The Anti-Camping Ordinance**
21       Plaintiff alleges that Defendants regularly issue citations to
22 homeless persons for sleeping in public under Laguna Beach, Cal.,
23 Code § 8.30.030 and Cal. Penal Code § 647 (e). He contends that this
24 practice violates his rights under the First, Fourteenth, and Eighth
25 Amendments of the U.S. Constitution – specifically, his rights to
26 travel, privacy, "be let alone," "meet basic needs," be free from
27 cruel and unusual punishment, equal protection, and due process. (Am.
28 Compl. at 15-20.) Plaintiff seeks monetary damages, injunctive

1  relief, and declaratory relief. (Am. Compl. at 23-34.) However, as

2  found in the previous Report and Recommendation, Plaintiff has failed

3  to show that he has standing to pursue any claims based on

4  enforcement of the Anti-Camping Ordinance, as he has never been cited

5  or suffered any tangible injury under it.

6      Standing is an "irreducible constitutional minimum" that must

7  exist for federal jurisdiction to attach. *Lujan v. Defenders of*

8  *Wildlife*, 504 U.S. 555, 560 (1992). "To satisfy Article III's standing

9  requirements, a plaintiff must show (1) it has suffered an 'injury in

10 fact' that is (a) concrete and particularized and (b) actual or

11 imminent, not conjectural or hypothetical; (2) the injury is fairly

12 traceable to the challenged action of the defendant; and (3) it is

13 likely, as opposed to merely speculative, that the injury will be

14 redressed by a favorable decision." *Friends of the Earth, Inc. v.*

15 *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

16 Additionally, "[i]t is a well-established rule that a litigant may

17 assert only his own legal rights and interests and cannot rest a claim

18 to relief on the legal rights or interests of third parties." *Coal.*

19 *of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1163 (9th

20 Cir. 2002) (citing *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976);

21 *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

22     In a suit for prospective injunctive relief, a plaintiff may

23 satisfy the "injury in fact" requirement by demonstrating a real and

24 immediate threat of future injury. *City of Los Angeles v. Lyons*, 461

25 U.S. 95, 101-02 (1983) (holding that the threat must be "real and

26 immediate" as opposed to "conjectural or hypothetical"). As to

27 declaratory relief, the Declaratory Judgment Act provides that in a

28 case of "actual controversy," a federal court "may declare the rights

6

and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

While some courts have concluded that a plaintiff has standing to challenge an anti-camping ordinance only if he has been convicted under it, *see Johnson v. City of Dallas*, 61 F.3d 442, 443-45 (5th Cir. 1995), courts in the Ninth Circuit have found that a citation or arrest under an anti-camping ordinance is sufficient to confer standing. *See Jones v. Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacated by* 505 F.3d 1006, 1126 (9th Cir. 2007)(finding that plaintiffs could demonstrate standing to challenge an anti-camping ordinance without having been convicted under it); *Lehr v. City of Sacramento*, 624 F.Supp.2d 1218, 1226 (E.D. Cal. May 20, 2009) ("[P]roof of a conviction is not a prerequisite to a constitutional claim"); *Anderson v. City of Portland*, No. 08-1447, 2009 WL 2386056, at *4 (D. Or. July 31, 2009) (same); *Joyce v. City & County of San Francisco,* 846 F.Supp. 843, 854 (N.D. Cal. 1994) (same). Nevertheless, each of these decisions noted that the plaintiffs had suffered meaningful injuries under the challenged ordinances, such as arrest, jail time, fines, or property loss while under arrest.

At the time of Plaintiff's original complaint, he had been warned twice that he would be cited if found sleeping his vehicle. Since then, he was also given a "courtesy notice of municipal code violation" for sleeping in his vehicle, and was awakened by an

7

officer's flashlight, once while sleeping on a bench and twice in his vehicle. (Am. Compl. at 7-8.) He claims that as a result, he suffered "sleep deprivation" and that he "sleeps in constant fear and anxiety of being awakened" by police. (Am. Compl. at 8, 16.)

Unlike the plaintiffs in *Jones, Lehr, Anderson,* and *Joyce,* Plaintiff has never been cited or arrested under the challenged ordinance. Nor has he suffered any injury akin to the property loss and other tangible harms suffered by these plaintiffs. The fact that Plaintiff has been awoken on two or three occasions by police officers and is anxious and fearful of being awoken again in the future simply does not constitute an injury sufficient to confer standing. *See Laidlaw*, 528 U.S. at 180-81 (finding that plaintiff must show an injury that is concrete and particularized). And, as emphasized in this Court's August 7, 2012 Report and Recommendation, to the extent Plaintiff rests his claim on the fact that other homeless persons have received citations, such allegations are insufficient to entitle Plaintiff to relief. *See Coal. of Clergy,* 310 F.3d at 1163.

Plaintiff has also failed to establish standing to seek prospective injunctive relief. Since Plaintiff became homeless and began sleeping in public in 2010, he has been warned only a handful of times against doing so and has never been cited. Under these circumstances, Plaintiff has not shown a "real and immediate" risk of citation or other injury from enforcement of the ordinance. *See Lyons,* 461 U.S. at 101-02.

Finally, Plaintiff has failed to demonstrate that declaratory relief would be appropriate. "The Declaratory Judgment Act was an authorization, not a command.... [declaratory relief] should be granted only as a matter of judicial discretion, exercised in the

1  public interest." *Public Affairs Assocs. v. Rickover*, 369 U.S. 111,

2  112 (1962) (per curiam) (internal quotations omitted). Given the

3  speculative nature of any injury Plaintiff may suffer under the

4  ordinance, the Court declines to exercise its jurisdiction to grant

5  such relief. *See id.; MedImmune*, 549 U.S. at 127.

6      Accordingly, Plaintiff has failed to plead facts sufficient to

7  show he has standing to pursue claims based on Defendants'

8  enforcement of the Anti-Camping Ordinance. *See Iqbal*, 129 S.Ct. at

9  1949. Moreover, having been given an opportunity to amend his

10  complaint to allege sufficient facts to demonstrate standing and

11  having failed to do so, it is recommended that this claim be

12  dismissed with prejudice and without leave to amend. *Ramirez v.*

13  *Galaza*, 334 F.3d 850, 861 (9th Cir. 2003); *Lopez v. Smith,* 203 F.3d

14  1122, 1127 (9th Cir. 2000); *Doe v. United States,* 58 F.3d 494, 497

15  (9th Cir. 1995).

16      **2. The "Intrusion Upon Seclusion/Privacy" Claim**

17      Plaintiff alleges a cause of action for "Intrusion Upon

18  Seclusion/Privacy" based on an incident where Officer Hiler knocked

19  on Plaintiff's car window, awakening Plaintiff, and gave him the

20  courtesy notice of municipal code violation. (Am. Compl. at 22.)

21  Plaintiff has not identified the legal basis for this claim. To the

22  extent Plaintiff is alleging a violation of his Fourth Amendment

23  rights, he has failed to allege the facts necessary to state such a

24  claim. While the Fourth Amendment to the U.S. Constitution prohibits

25  unreasonable searches of areas in which there is a legitimate

26  expectation of privacy and unreasonable seizures of the person, *see*

27  *United States v. Davis,* 932 F.2d 752, 756-67 (1991), here Plaintiff

28  was not seized and no search of his person or vehicle took place.

1   Accordingly, Plaintiff has failed to state a claim for relief and the

2   claim should be dismissed with prejudice. *See Iqbal*, 129 S.Ct. at

3   1949.

### 3.   Denial of Access to the ASL

5   Plaintiff claims that his rights were violated when he was denied

6   access to the ASL. Specifically, he claims that the denial violated

7   his rights to "travel, privacy, meet basic needs and be let alone"

8   under the First and Fourteenth Amendments; his right to be free from

9   cruel and unusual punishment under the Eighth Amendment; and his

10  rights to equal protection, substantive due process, and procedural

11  due process under the Fourteenth Amendment. (Am. Compl. at 15-23.)

12  To the extent Plaintiff is arguing that he has an absolute right

13  to shelter at the ASL, such an argument fails to state a valid claim

14  to relief. The United State Constitution does not guarantee government

15  provision of shelter to the homeless. *See e.g., Lindsey v. Normet,* 405

16  U.S. 56, 74 (1972).

17  However, Plaintiff also states that he was denied access to the

18  ASL for refusing to sign a liability waiver and for failing to meet

19  the residency requirements. These claims are addressed below.

### a. The Liability Waiver

21  Plaintiff alleges that he has been forced to leave the ASL

22  premises for refusing to sign the liability waiver.[2] (Am. Compl. at

23  4-5). The waiver provides: "As a condition of my participation, I

24  agree to release the City and Service Providers from any claims for

25  injury, damages, or loss arising from or relating to my stay at the

---

27  [2] While the form containing the liability waiver is entitled "Rules
and Regulations" and lists multiple rules related to use of the ASL, it

28  appears that Plaintiff objects only to the liability waiver portion of
the form.

1  ASL/LRRC or due to my participation in any activities offered as a
2  part of the programming offered at the site." (Doc. 30 at. Ex. J).
3  Plaintiff claims that "requiring a waiver of right of access to the
4  courts to gain other rights" violates his due process rights. (Am.
5  Compl. at 18).

6      The Due Process Clause of the Fourteenth Amendment encompasses
7  a right of access to courts to allow vindication of fundamental rights
8  that cannot be otherwise protected. *See Los Angeles Cnty. Bar Ass'n*
9  *v. Eu*, 979 F.2d 697, 705 (9th Cir. 1992) (citing *Boddie v.*
10 *Connecticut*, 401 U.S. 371, 374 (1971)); *Lewis v. Casey,* 518 U.S. 343,
11 354 (1996) (the right of access-to-courts encompasses civil rights
12 actions to vindicate basic constitutional rights). In the August 7,
13 2012, Report and Recommendation, Plaintiff's liability waiver claim
14 was dismissed with leave to amend. It was found that in order to state
15 a denial of access to courts claim, a plaintiff must plead the
16 existence of a nonfrivolous underlying claim that he was prevented
17 from raising in court. *See Christopher v. Harbury,* 536 U.S. 403, 414-
18 15 (2002); *see also Lewis,* 518 U.S. at 351-54 (plaintiff must
19 demonstrate actual injury by showing that he was hindered in pursuing
20 a legal claim).

21     In the original complaint, Plaintiff did not allege any
22 underlying claim that he was prevented from raising in a court. In the
23 current complaint, Plaintiff suggests he may have underlying claims
24 arising from the ASL's sanitation levels, ASL staff conduct, and
25 background checks allegedly performed on ASL guests. (Am. Compl. at
26 18-19.) But this is pure speculation. Plaintiff has not pled facts
27 sufficient to show the existence of any nonfrivolous claims in which
28 his legal position has been somehow prejudiced or lost. A plaintiff

1 must show that he was actually "shut out" of court in order to state

2 a denial of access cause of action.[3] *Christopher*, 536 U.S. at 415.

3     Accordingly Plaintiff has failed to state a claim upon which

4 relief may be granted arising from the liability waiver. Plaintiff's

5 inability to state facts giving rise to a viable cause of action

6 mandates that the claim be dismissed with prejudice and without leave

7 to amend.

8 **b. The Residency Requirements**

9     Plaintiff states that he has been prohibited by ASL staff members

10 from sleeping at the ASL due to his failure to meet local residency

11 requirements. (Am. Compl. at 4.) He alleges that the City passed a

12 measure requiring guests of the ASL to demonstrate residency in Laguna

13 Beach through one of the following: (1) proof of strong ties to the

14 community; (2) proof that the individual attended K-12 school in

15 Laguna beach; (3) proof that the individual resided on residential

16 property in Laguna Beach; or (4) knowledge by the Police Department

17 that the individual has been a member of the Laguna Beach homeless

18 community for at least 18 months. (Doc. 30 Ex. H "City of Laguna Beach

19 Agenda Bill.")

20     He also alleges that Officer Farris has failed to place Plaintiff

21 on a "locals list" distributed to the ASL, which appears to refer to

22

23     [3] In passing, it should be noted that under California law,

24 liability waivers exempting anyone from liability for gross negligence, willful injury, fraud, or violation of the law are invalid. Cal. Civ.

25 Code § 1668; *see also City of Santa Barbara v. Superior Court*, 161 P.3d 1095, 1115 (Cal. 2007). This is particularly so when the party

26 asserting the waiver is engaged in performing a public service of practical necessity for some members of the public. *See City of Santa*

27 *Barbara*, 161 P.3d at 1099-1101 (citing *Tunkl v. Regents of Univ. of Cal.*, 60 Cal.2d 92 (Cal. 1963)). Therefore, it is not clear tht the

28 liability waiver, if signed, would prevent Plaintiff from bringing a claim for relief relating to the ASL.

1  the mechanism by which a homeless person can demonstrate residency

2  under the fourth option by showing police knowledge that he is a

3  resident. (Am. Compl. at 8, 20.) The Court construes Plaintiff's

4  claims based on the residency requirement as alleging that: (1) the

5  durational residency requirement of 18 months, for those homeless

6  persons unable to demonstrate residency in another acceptable way,

7  violates Plaintiff's right to travel, and (2) Officer Farris's failure

8  to place him on a "locals list" violates his right to procedural due

9  process.

10                    **I. The Durational Residency Requirement**

11      At most, Plaintiff's challenge to the residency requirement

12  implicates the constitutional right to travel. The right to interstate

13  travel has been recognized as a fundamental federal constitutional

14  right. *See Saenz v. Roe,* 526 U.S. 489, 501 (1999); *Shapiro v.*

15  *Thompson*, 394 U.S. 618, 629 (1969). While not explicitly mentioned in

16  a particular constitutional provision, it has been found to be

17  grounded in the Privileges and Immunities Clause, the Due Process

18  Clause, and the Equal Protection Clause. *See Shapiro,* 394 U.S. at 630

19  n.8; *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 269-70 (1974). State

20  laws imposing durational residency requirements for the receipt of

21  government benefits infringe on the right to travel unless they meet

22  strict scrutiny. *See Mem'l Hosp.,* 415 U.S. at 254 (holding that

23  statute requiring a year's residence in county to receive free medical

24  care violates the right of interstate travel absent a compelling state

25  interest).[4]

26  ─────────────────

27          [4] In contrast to a durational residency requirement, States and
    municipalities may impose a "bona fide" residency requirement to ensure
28  that services and benefits go to actual residents. "A bona fide
    residence requirement simply requires that the person does establish

On the other hand, the Supreme Court has expressly declined to decide whether the Constitution protects a fundamental right to intrastate travel. *Mem'l Hosp.*, 415 U.S. at 255-56. The Ninth Circuit has likewise explicitly declined to express an opinion on this issue. *See Nunez v. City of San Diego,* 114 F.3d 935, 943, n. 7 (9th Cir. 1997); *Lauran v. U.S. Forest Serv.,* 141 Fed.Appx. 515, 520 (9th Cir. 2005). This Court is unaware of any district court decision within the Ninth Circuit expressly deciding whether the right to intrastate travel exists. Instead, the district courts confronting an intrastate travel claim have avoided deciding this issue, concluding that even if such a right did exist, it would not have been violated in the particular circumstances of the case. *See, e.g., Z.F. v. Ripon Unified School Dist.,* No. 2:10-cv-00523, 2011 WL 4056084, at *3 (E.D. Cal. Sept. 12, 2011) ("The question of whether there is a federal constitutional right of intrastate travel need not be reached, since even assuming arguendo that such a right exists, [plaintiffs] fail to allege a plausible violation of that right."); *Daly v. Harris,* 215 F.Supp.2d 1098, 1114-15 (D. Hawaii 2002) ("Even assuming [the right to intrastate travel] exists, the Court finds [the challenged ordinance] does not 'impinge' upon it.").[5]

---

residence before demanding the services that are restricted to residents. *Martinez v. Bynum*, 461 U.S. 321, 329 (1983); *see also McCarthy v. Philadelphia Civil Service Comm'n*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976)." *Int'l Org. of Msters, Mates and Pilots v. Andrews,* 831 F.2d 843, 847 (9th Cir. 1987), *Bell v. City of Boise*, 834 F.Supp.2d 1103, 1115 (D. Idaho 2011).

[5] Several other circuits have recognized the existence of a right to intrastate travel. *See Selevan v. New York Thruway Auth.,* 584 F.3d 82, 100 (2d Cir. 2009) ("we have recognized the Constitution's protection of a right to intrastate as well as interstate travel."); *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002) ("In view of the historical endorsement of a right to intrastate travel and the practical necessity of such a right, we hold that the Constitution

14

1       As Plaintiff did not travel to Laguna Beach from out of state,[6]
2 it is only his right to intrastate travel that is implicated by the
3 ASL's durational residency requirement.[7] The parties have not
4 addressed the issue of whether the right to travel recognized by the
5 Supreme Court encompasses the right to intrastate travel. Without
6 additional briefing, it is premature for the court to decide whether
7 the Constitution protects a fundamental right to intrastate travel and
8 if so, whether Plaintiff has stated a claim upon which relief may be
9 granted for violation of such a right. Fact development may also be
10 necessary to resolve this claim. Accordingly, the motion to dismiss
11 this claim should be denied without prejudice as to the City and the
12 City Manager in his official capacity.

13       On the other hand, Plaintiff has brought this claim against "all
14 defendants." (Am. Compl. at 15.) However, he has not alleged facts
15 showing that any of the named Laguna Beach Police Department police
16 officer defendants have been involved in creating, implementing, or
17 enforcing the residency requirement for overnight shelter at the ASL.
18 In the absence of any allegation of personal involvement in the
19 alleged constitutional deprivation by the police officer defendants,

---

protects a right to travel locally through public spaces and roadways."); *Lutz v. City of York,* 899 F.2d 255, 266-68 (3d Cir. 1990) (recognizing right to intrastate travel as derived from principles of substantive due process); *see also Cole v. Housing Auth. of Newport*, 435 F.2d 807 (1st Cir. 1970) (implicitly recognizing right to intrastate travel by invalidating city's two-year residency requirement for applicants to public housing in challenge brought by one plaintiff who had moved from out of state and another plaintiff who had moved from within state to the city).

[6] *See Porto v. City of Newport Beach,* No. 11-0180, 2011 WL 2470128 (C.D. Cal. May 20, 2011).

[7] And the right to travel has been found to only protect movement between places and not the right of access to a particular place. *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2nd Cir. 2008).

15

1  this claim must be dismissed with prejudice as to each of them.

2          **ii.  Officer Farris's Failure to Place Plaintiff**
3                      **on a Local Residents List**

4          Under the residency requirements allegedly in place at the ASL,
5  residency can be demonstrated by showing knowledge by the Laguna Beach
6  Police Department that the individual has been a member of the Laguna
7  Beach homeless community for at least 18 months. (Doc. 30 Ex. H.)
8  Plaintiff alleges that he has been homeless in Laguna Beach since
9  early 2010, well over 18 months ago, but that the police, specifically
10 Officer Farris, have failed to place him on a "locals list." (Am.
11 Compl. at 8.) Plaintiff appears to be claiming that the fact that he
12 cannot challenge the failure to be placed on the locals list and
13 resulting denial of access to the ASL violates his procedural due
14 process rights. (Am. Compl. at 20.)

15         The guarantee of procedural due process applies only when a
16 constitutionally protected liberty or property interest is at stake.
17 *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Bd. of Regents of*
18 *State Colls. v. Roth*, 408 U.S. 564, 569 (1972); *Erickson v. United*
19 *States*, 67 F.3d 858, 861 (9th Cir. 1995). Here, Plaintiff has not
20 shown that he has a constitutionally protected liberty or property
21 interest in access to the ASL.  Accordingly, Plaintiff has failed to
22 state a claim for relief on this ground. *See Iqbal*, 129 S.Ct. at 1949.

23              **3. Failure to Train**

24         Plaintiff alleges that the City's failure to train police
25 officers and ASL staff in the proper treatment of homeless persons
26 resulted in the unconstitutional policy and practice of citing
27 homeless persons for sleeping in public, depriving Plaintiff of his
28 rights. (Am. Compl. at 20-22.) Those in positions of authority are

1  liable under section 1983 not only when "action pursuant to official
2  municipal policy of some nature causes a constitutional tort," *Monell*
3  *v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), but also if there
4  is "a policy of inaction and such inaction amounts to a failure to
5  protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1474
6  (9th Cir. 1992). In order for Plaintiff to succeed on his "policy and
7  practice" claim, he must establish four elements: "(1) that he
8  possessed a constitutional right of which he was deprived; (2) that
9  the municipality had a policy; (3) that this policy 'amounts to
10 deliberate indifference' to the plaintiff's constitutional right; and
11 (4) that the policy is the 'moving force behind the constitutional
12 violation.'" *Oviatt*, 954 F.2d at 1474 (quoting *City of Canton v.*
13 *Harris*, 489 U.S. 378, 389-91 (1989)).

14      Where there is no constitutional violation, a claim that there
15 is a policy of violating constitutional rights cannot stand. *Sweaney*
16 *v. Ada Cnty.*, 119 F.3d 1385, 1392 (9th Cir. 1997). Because Plaintiff
17 has not adequately plead a claim on which relief can be granted for
18 violation of his constitutional rights based on enforcement of the
19 Anti-Camping Ordinance, his claim that City failed to properly train
20 or supervise its police officers or ASL staff must be dismissed. *See*
21 *id.*

22      **B. California Public Records Act**
23      Plaintiff alleges that the City has violated the California
24 Public Records Act, Cal. Gov. Code. § 6250, et seq, ("the Act") by
25 failing to respond to Plaintiff's record requests. (Am. Compl. at
26 23.) Defendants argue that: (1) the Court should decline to exercise
27 its discretion to assume pendent jurisdiction of this state law
28 claim, as there is no nexus between this contention and other

1   portions of the complaint; (2) that the Act requires any enforcement

2   action to be commenced in "the superior court of the county where the

3   records . . . are situated," and (3) that the Act provides no remedy

4   for damages.

5        The decision of whether to accept supplemental jurisdiction over

6   state law claims pursuant to 28 U.S.C. § 1367(a) is within a district

7   court's discretion. *See City of Chicago v. Int'l. Coll. of Surgeons*,

8   522 U.S. 156, 172 (1997) ("that the terms of § 1367(a) authorize the

9   district courts to exercise supplemental jurisdiction over state law

10  claims ... does not mean that the jurisdiction must be exercised in

11  all cases"); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S.

12  715, 726 (1966). Here, it is recommended that jurisdiction be

13  declined over Plaintiff's state law claims under the California

14  Public Records Act.

15

16  **IV.** **Conclusion**

17       In accordance with the foregoing, it is recommended that the

18  motion to dismiss be granted with prejudice and without leave to

19  amend with respect to all claims and all defendants but for 1) the

20  California Public Records Act claim, which should be dismissed

21  without prejudice, and 2) the claim challenging the ASL durational

22  residency requirement against the City of Laguna Beach and John

23  Pietig in his official capacity.

24  Dated: January 23, 2013

25                                          _____

26                                          Marc L. Goldman
                                            United States Magistrate Judge

27

28

                                    18