**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | | |
|---|---|---|
| LEONARD J. PORTO III, | ) | No. SA CV 12-00501-DOC (PLA) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **THIRD REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |
| CITY OF LAGUNA BEACH, et al., | ) | |
| Defendants. | ) | |

This Third Report and Recommendation is submitted to the Honorable David O. Carter, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.  For the reasons set forth below, the Magistrate Judge recommends that defendants' motion for summary judgment be granted and the case dismissed.

/

/

/

/

/

/

# I.

## BACKGROUND

Plaintiff filed a pro se civil rights action herein pursuant to 42 U.S.C. § 1983 on April 2, 2012, after being granted leave to proceed in forma pauperis.  Plaintiff named as defendants the City of Laguna Beach ("the City"), the Laguna Beach Police Department, Officer Jason Farris, City Manager John Pietig, as well as several doe defendants.  In his Complaint (Docket No. 4), plaintiff purported to raise various claims pertaining to the alleged practice of the Laguna Beach Police Department of harassing homeless persons by citing them for sleeping in public; the alleged residency policy adopted by the City in operating its homeless shelter, the Alternative Sleeping Location ("ASL"); and alleged violations of plaintiff's "First and Fourteenth Amendment rights to association, travel, meet basic needs and be let alone."  (Docket No. 4 at 14).

Defendants filed their first motion to dismiss on May 1, 2012 (Docket No. 13), and the Court[1] issued its first Report and Recommendation on August 7, 2012 (Docket No. 26), recommending that several of plaintiff's claims be dismissed with prejudice and that the remaining claims be dismissed with leave to amend. The District Judge adopted the first Report and Recommendation in full on September 4, 2002.  (Docket No. 29).

Plaintiff's First Amended Complaint ("FAC"), the operative pleading herein, was filed on September 28, 2012.  (Docket No. 36).  In the FAC, plaintiff continues to allege various federal claims and one state law claim pursuant to the California Public Records Act against the City, several members of the Laguna Beach Police Department, and John Pietig, individually and in his official capacity as City Manager.  Plaintiff alleges that he traveled to the City in January 2010, was a resident in the City for three months, became homeless, and subsequently has been sleeping in his vehicle.  (FAC at 2, 4).  Plaintiff's claims in the FAC arise from his allegations that defendants issue citations under a City ordinance restricting camping and sleeping in public areas ("the Anti-Camping Ordinance") in order to harass homeless persons and to encourage them to

---

[1]     At that time, the case was assigned to the calendar of Magistrate Judge Marc L. Goldman. On April 3, 2013, this case was transferred to the calendar of this Court for all further proceedings pursuant to an Order of the Chief Magistrate Judge (Docket No. 51).

leave the City.  (FAC at 6).  In addition, plaintiff alleges that he has been cited for a violation of the Anti-Camping Ordinance, warned that he would be cited in the future if he were found to be sleeping in his vehicle, and awakened at night by police officers shining flashlights inside his vehicle or while he was sleeping on a bench.  (FAC at 7-8).  Plaintiff also alleges that staff at the ASL told plaintiff that "all persons had to sign and return" a form entitled "Registration and Rules," and that his "refusal to sign the Registration and Rules resulted in an angered ASL employee Mr. Reid McClatchy ordering Plaintiff to leave the ASL twice in 2012."  (FAC at 4-5).

Defendants filed their second motion to dismiss on October 10, 2012.  (Docket No. 37).  The Court issued its second Report and Recommendation on January 23, 2013 (Docket No. 50), recommending that all federal claims against all defendants be dismissed with prejudice apart from plaintiff's claim against the City and City Manager Pietig, in his official capacity, challenging the City's alleged residency requirement for use of the ASL.   The second Report and Recommendation also recommended that jurisdiction be declined over plaintiff's state law claim and that plaintiff's state law claim be dismissed without prejudice.  The District Judge entered an Order on May 21, 2013 (Docket No. 52), accepting and adopting the findings and recommendations in the Court's second Report and Recommendation.  All federal claims against all defendants were dismissed with prejudice and without leave to amend apart from plaintiff's claim challenging the durational residency requirement at the ASL that plaintiff raises against defendants the City of Laguna Beach and John Pietig, in his official capacity.  The FAC's state law claim also was dismissed without prejudice.  (Docket No. 52).

On January 29, 2014, the remaining two defendants herein, the City and City Manager John Pietig, filed a Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Motion"), accompanied by a Memorandum of Points and Authorities.  (Docket  No. 62).  Defendants also filed a Statement of Uncontroverted Facts and Conclusions of Law (Docket No. 63, "Defendants' Statement"); a Declaration of Richard Scott with one attached exhibit (Docket No. 64); a Declaration of Philip Kohn (Docket No. 65), with attached exhibits, including excerpts from plaintiff's Deposition as Exhibit 4 (Docket No. 65-3); and a Declaration of John Pietig (Docket No. 66), with several attached exhibits.

1    Defendants contend that they are entitled to summary judgment on the following grounds:

2    (1) plaintiff was never precluded from sleeping overnight at the ASL on the basis of the "Locals

3    Criteria"[2]; (2) even if plaintiff would otherwise have a claim pertaining to the Locals Criteria,

4    plaintiff's testimony that he would never sign ASL's required "Registration and Rules" form would

5    prevent plaintiff from sleeping overnight at the ASL regardless of the Locals Criteria; (3) the Locals

6    Criteria does not impose a durational residency requirement and it is only applied when the

7    demand for overnight accommodation at the ASL exceeds capacity; (4) because plaintiff suffered

8    no injury from the Locals Criteria, his challenge to the policy is a facial one that is barred by the

9    statute of limitations; (5) even if a constitutional right to intrastate travel exists, it is not implicated

10   by the Locals Criteria; and (6) defendant Pietig is not an official policymaker with respect to the

11   Locals Criteria and is not a proper defendant, and, even if Pietig were a proper defendant, he

12   would be entitled to qualified immunity.  (Docket No. 62 at 6-7).[3]

13       In an Order filed January 31, 2014 (Docket No. 67), the Court provided plaintiff with the

14   requisite notice of the requirements for opposing a summary judgment motion, including the

15   requirement of Local Rule 56-2 that plaintiff file a separate document entitled "Statement of

16   _____

17       [2]  Defendants refer to a policy pertaining to the ASL and adopted by the Laguna Beach City
     Council as the "Locals Criteria."  (See Docket No. 62 at 9-10).  As explained below, defendants

18   contend that the Locals Criteria is the only residency policy in effect at the ASL.  (Id.).

19       [3]  The Court's recommendation that the case be dismissed because plaintiff lacks standing to

20   challenge the Locals Criteria renders it unnecessary to reach the other grounds raised in
     defendants' Motion. The Court, however, notes that, as defendants argue (Docket No. 71 at 7 n.1)

21   and as the Court has previously found (see Docket No. 50 at 14), plaintiff is incorrect in asserting
     that the Ninth Circuit has "recognized a limited fundamental constitutional right to intrastate travel"

22   (Docket No. 68 at 13, 18 (citing Nunez by Nunez v. City of San Diego, 114 F.3d 935 (9th Cir.
     1997)).  Rather, although a freedom to travel internationally has been found to be a protected

23   liberty issue, the Ninth Circuit has explicitly declined to decide the issue of whether the
     Constitution protects a fundamental "right of intrastate travel."  See Nunez by Nunez, 114 F.3d at

24   944 n.7 (declining to decide the issue and explaining that there was a split in other circuits whether
     the Constitution guarantees a "right of intrastate travel"); see also International Organization of

25   Masters, Mates & Pilots v. Andrews, 831 F.2d 843, 846 (9th Cir. 1987) (finding that only plaintiffs
     alleging a burden on their right to move away from the state had standing to challenge a statute

26   on the basis of a "right to travel" that is protected by the Equal Protection Clause), cert. denied,
     485 U.S. 962 (1988); Hammel v. Tri-County Metro. Transp. Dist., 955 F. Supp. 2d 1205, 1210 (D.

27   Or. 2013) (noting that the Supreme Court and the Ninth Circuit have declined to decide the issue

28   of whether the "Constitution guarantees the fundamental right to intrastate travel").

4

Genuine Issues," which sets forth concisely all material facts as to which plaintiff contends there exists a genuine dispute necessary to be litigated.[4]

On March 4, 2014, plaintiff filed his Opposition to the Motion, consisting of a document entitled "Plaintiff's Opposition to Motion for Summary Judgment; Memorandum; Declaration" (Docket No. 68), which includes a one page "Declaration of Leonard J. Porto III" (Docket No. 68 at 23) and one exhibit, as well as a document entitled "Plaintiff's Statement of Genuine Issues in Opposition to Motion for Summary Judgment" ("Plaintiff's Statement") (Docket No. 69). Within his Opposition, plaintiff references a declaration that he filed herein in connection with his opposition to defendants' second Motion to Dismiss (see Docket No. 43 at 30-32). In light of plaintiff's pro se status, the Court has an obligation to liberally construe the documents that he files. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (noting that a "document filed pro se is 'to be liberally construed'"). Accordingly, the Court will also consider plaintiff's earlier declaration, to the extent that it is relevant to the pending Motion and is based on plaintiff's personal knowledge, as part of his Opposition. See, e.g., Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (holding that where the plaintiff is pro se, the court "must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that

---

[4]   The Court's Order's stated, in part, that (Docket No. 67 at 2-3):

> [P]ursuant to Local Rule 56-2, you must file and serve with your opposing papers a separate document entitled "Statement of Genuine Issues," which sets forth concisely all material facts as to which you contend there exists a genuine issue necessary to be litigated. The "Statement of Genuine Issues" should (a) specify, for each of the facts listed as uncontroverted in defendants' "Statement of Uncontroverted Facts and Conclusions of Law," whether you concede that the fact is undisputed, and if not the evidence which you believe establishes that the fact is not undisputed, and (b) list all other material facts which you contend are in dispute, and specify for each the evidence which you believe establishes that the fact is in dispute. **You are admonished that your failure to file the required "Statement of Genuine Issues" may be deemed by the Court a sufficient basis for granting the summary judgment motion.**

1  would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the

2  contents of the motions or pleadings are true and correct").[5]

3     Defendants filed a Reply on April 2, 2014 (Docket No. 71), accompanied by a Response

4  to Plaintiff's Statement of Genuine Issues (Docket No. 72) and a Response to Declaration of

5  Plaintiff (Docket No. 73). Defendants object that Plaintiff's Statement fails to comply with Local

6  Rule 56-2, fails to address each of the Uncontroverted Facts in Defendants' Statement, and fails

7  to support plaintiff's purported "Contentions of Fact" with any evidence. (Docket No. 71 at 5-6;

8  Docket No. 72). The Court concurs that plaintiff has altogether failed to comply with the

9  requirements of Local Rule 56-2. Plaintiff's Statement references only two of defendants' sixteen

10  proposed Uncontroverted Facts. (See Docket No. 69 at 2). Further, even construing Plaintiff's

11  Statement liberally, for fourteen of defendants' sixteen Uncontroverted Facts plaintiff fails to even

12  purport to comply with the requirement that he specify the evidence that he believes establishes

13  that those facts are in dispute. Accordingly, the Court finds that defendants' Uncontroverted Facts

14  1-11, 13, and 15-16, are undisputed. See, e.g., Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir.

15  2010) (noting that Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007), holds that pro se

16  litigants "must comply strictly with the summary judgment rules"). Defendants also object that

17  Plaintiff's Statement is "largely nonsensical, complicated by the manner in which his statement is

18  formatted," and fails to support his contentions with any evidence. (Docket No. 72). The Court

19  sustains defendants' objections to the extent that they are objecting that plaintiff's purported

20  "contentions of fact" are conclusory, are unsupported by any evidence, or are irrelevant. In

21  addition, the Court sustains defendants' objections to Plaintiff's Declaration to the extent that

22  plaintiff's statements therein are irrelevant to the issues to be decided in the pending Motion and/or

23  are purely conclusory. (See Docket No. 73). The Court, however, overrules defendants' objection

24  that plaintiff should be precluded from making statements in the declaration on subjects about

25  which he refused to provide testimony at his deposition. (Id. at 2).

26  _____

27    [5]   The Court notes, however, that plaintiff's FAC, the operative pleading herein, was not

28  signed under penalty of perjury, and, accordingly, the Court will not be consider any allegations
therein as evidence in Opposition to defendants' Motion. (See Docket No. 36).

## II.

## LEGAL STANDARD

The Court must grant summary judgment if the papers "show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. Id. at 248. Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter but, rather, to determine whether there is any genuine issue for trial. See Liberty Lobby, 477 U.S. at 249. Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Consequently, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Liberty Lobby, 477 U.S. at 252. Moreover, summary judgment cannot be avoided by relying solely on conclusory allegations unsupported by factual data. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal citation and quotation marks omitted).

## III.

## SUMMARY OF MATERIAL FACTS

The Court finds the following material facts to be undisputed except where otherwise noted.

On October 6, 2009, the Laguna Beach City Council directed its staff to establish the Alternative Sleeping Location ("ASL"). (Defendants' Statement, Uncontroverted Fact ("UF") #1).

At a public meeting on November 3, 2009, the City Council adopted the "Locals Criteria" to establish factors to give priority at the ASL to persons having ties to the community; the Locals Criteria includes four factors that can be used to meet the residency requirement. (Id., UF #4; Docket No. 66, ¶7, Ex. 6 at 98).  "The Locals Criteria are not an automatic requirement for all persons staying at the ASL.  That is, persons not meeting the criteria nevertheless may stay at the ASL as space is available." (Defendants' Statement, UF #5; Docket No. 66, ¶7; Docket No. 64, ¶4).  When the Locals Criteria is applied, "surplus space is allocated on a random, lottery-type basis."  (Defendants' Statement, UF #6; Docket No. 66, ¶7; Docket No. 64, ¶4).

The ASL requires persons who wish to stay at the ASL to sign a "Registration and Rules" form that prescribes policies and rules for access to the ASL.  (Defendants' Statement, UF #8; Docket No. 64, ¶5, Ex. 1).  The Registration and Rules form concerns topics such as smoking restrictions, clothing requirements, prohibitions on weapons and pets, and includes a liability waiver for the service providers of the ASL and the City.  (Defendants' Statement, UF #9; Docket No. 64, ¶5, Ex. 1).

When questioned during his deposition, plaintiff confirmed that he was familiar with the Registration and Rules form, and that he has been asked to sign it but has refused.  (Defendants' Statement, UF #10; Docket No. 65-3 at 4-5).  During his deposition, plaintiff also confirmed that he is "not going to sign the form." (Defendants' Statement, UF #11; Docket No. 65-3 at 5).  The staff at ASL have not had occasion to evaluate plaintiff with regard to the Locals Criteria. (Defendants' Statement, UF #12; Docket No. 64, ¶¶ 6-11).  Plaintiff's Statement purports to dispute this fact by stating that the staff at ASL "have been well aware Plaintiff is NOT or can be [sic] qualified as a local resident." (emphasis in original).  (Docket No. 69 at 2).  Plaintiff, however, points only to his own testimony at his deposition that: "Well, I've always known, everybody's always known, staying there overnight was not an option because I was not a resident."  (Docket No. 65-3 at 3).  Plaintiff cannot create a genuine issue of material fact by relying solely on uncorroborated and conclusory allegations unsupported by factual data and evidence. See Taylor, 880 F.2d at 1045; FTC v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010) (a party cannot create a triable issue of fact by putting "forward nothing more than a few bald, uncorroborated, and

1   conclusory assertions rather than evidence") (as amended).  Here, plaintiff points to no facts or

2   evidence that contradict defendants' evidence from the person "principally responsible for

3   overseeing and supervising the operations of" ASL that the staff at ASL has never evaluated

4   plaintiff under the Locals Criteria.  (See Docket No. 64, ¶¶1, 7-10).  Accordingly, the Court finds

5   that defendants' Uncontroverted Fact No. 12 is undisputed.

6        At his deposition, plaintiff confirmed his misunderstanding of the Locals Criteria in stating

7   that "satisfaction of the Locals Criteria is an absolute requirement for [overnight] access to ASL."

8   (Defendants' Statement, UF #13; Docket No. 65-3 at 3).[6]  To the extent that plaintiff has been

9   denied access to the ASL, "this was not due to the application of the Locals Criteria, but simply

10  because plaintiff failed and refused to sign the Registration and Rules form."  (Defendants'

11  Statement, UF #14; Docket No. 64, ¶¶11-12).  Plaintiff's Statement purports to dispute

12  Uncontroverted Fact No. 14 by stating that he "[w]as denied access to the ASL for sleeping from

13  2010-2013 [sic] at all times the ASL was at capacity with residents, based on residency

14  requirements."  (Docket No. 69 at 2).  To support this contention, plaintiff points to his First

15  Declaration and cites one page of the Court's January 2013 Report and Recommendation in which

16  the Court references an allegation in plaintiff's FAC.  (See Docket No. 50 at 10).  As the Court has

17  admonished plaintiff, at the Summary Judgment stage, he may not rely solely on conclusory

18  allegations in his pleadings that are unsupported by factual data.  (See Docket No. 67 at 2).

19  Further, to the extent that plaintiff's First Declaration is relevant to this Uncontroverted Fact,

20  plaintiff admits therein that he was denied access to the ASL because he refused to sign the

21  waiver contained in the Registration and Rules form:  "I have been ordered by staff member Mr.

22  Reed [sic] McClatchy to leave the [ASL] in January and March 2011 for failure to sign a waiver of

23  _____

24      [6]   Plaintiff also purports to contradict defendants' "Proposed Conclusions of Law" No. 1, that
     "the Locals Criteria was never applied to plaintiff," by pointing to defendants' Exhibit 5.  (Docket
25   No. 69 at 2).  The specific page to which plaintiff points in this Exhibit, however, expressly states
     that the criteria to be implemented at the ASL would limit the shelter services to "homeless
26   persons with local ties if the demand for the temporary emergency alternative sleeping location
     exceeds capacity."  (Docket No. 66-5 at 20; see also Docket No. 66-5 at 21 (setting forth the
27   recommended criteria to be implemented "should the temporary emergency alternative sleeping
28   location become overcrowded")).

1  all of my rights." (Docket No. 43 at 30). Plaintiff's subsequent assertion that "I have never been

2  allowed to sleep at the shelter due to not meeting City residency requirements" (id.), is an example

3  of the type of bald, uncorroborated, and conclusory assertion that is entirely insufficient to create

4  a triable issue of fact. See Neovi, Inc., 604 F.3d at 1159. Accordingly, the Court finds that

5  defendants' Uncontroverted Fact No. 14 is undisputed.

6        Plaintiff filed his initial Complaint herein on March 23, 2012, and he alleges in his FAC that

7  he traveled to the City in January 2010. (Defendants' Statement, UF ##15-16).

8

9                                              **IV.**

10                                        **DISCUSSION**

11        A federal court has an obligation to assure itself of jurisdiction before proceeding to the

12  merits of any case. See Lance v. Coffman, 549 U.S. 437, 439, 127 S. Ct. 1194, 167 L. Ed. 2d 29

13  (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the

14  merits.").[7] A court lacks subject matter jurisdiction if a plaintiff fails to establish Article III standing.

15  See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391

16  (1994) (the party asserting federal subject matter jurisdiction bears the burden of proving its

17  existence); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351

18  (1992) ("the party invoking federal jurisdiction bears the burden of establishing" the elements of

19  standing); Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) ("the party seeking to invoke the

20  court's jurisdiction bears the burden of establishing that jurisdiction exists").

21        To establish constitutional standing, a plaintiff must demonstrate each of three "irreducible"

22

23  _____

24        [7]   Here, defendants' undisputed evidence reflects that plaintiff has never been subjected to
     application of the Locals Criteria. Defendants argue that, because plaintiff has admitted that he

25  has never signed a Registration and Rules form and never will sign the form, and because the
     form must be signed by persons who wish to stay overnight at the ASL, plaintiff's challenge to the

26  Locals Criteria "lacks the requisite causation required to prove a violation of Section 1983."
     (Docket No. 65 at 13-14). Although defendants did not extend this argument to contend that the

27  Court lacks subject matter jurisdiction because plaintiff did not suffer sufficient injury to establish
     Article III standing, the Court has an obligation to assure itself of jurisdiction by, among other

28  things, inquiring into whether a plaintiff has standing to sue. See Lance, 549 U.S. at 439.

core elements:  "(1) injury-in-fact -- plaintiff must allege 'concrete and particularized' and 'actual or imminent' harm to a legally protected interest; (2) causal connection -- the injury must be 'fairly traceable' to the conduct complained of; and (3) redressability -- a favorable decision must be 'likely' to redress the injury-in-fact."  Barnum Timber Co. v. United States EPA, 633 F.3d 894, 897 (9th Cir. 2011) (internal citations omitted); see also Wash. Envtl. Council v. Bellon, 732 F.3d 1131, 1141 (9th Cir. 2013) (to satisfy the causality element for Article III standing, "[t]he line of causation between the defendant's action and the plaintiff's harm must be more than attenuated").  Additionally, "[i]t is a well-established rule that a litigant may assert only his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties."  Coalition of Clergy v. Bush, 310 F.3d 1153, 1163 (9th Cir. 2002) (citing Singleton v. Wulff, 428 U.S. 106, 113-14 (1976)).  "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Article III's requirements."  Diamond v. Charles, 476 U. S. 54, 62, 106 S. Ct. 1697, 90 L. Ed. 2d 48 (1986).

Here, defendants' undisputed evidence reflects that the staff at ASL has not had occasion to evaluate plaintiff with regard to whether or not he satisfies the Locals Criteria, and that, to the extent that plaintiff has been denied access to facilities at the ASL, such denial was based on plaintiff's admitted refusal to sign the required Registration and Rules form.  (See Defendants' Statement, UF ##10, 12, 14).  Accordingly, the undisputed evidence reflects that plaintiff has failed to demonstrate any concrete and particularized actual harm arising from application of the Locals Criteria.  Moreover, to the extent that plaintiff's claims may be liberally construed to be based on a fear that he will in the future be denied access to the ASL based on application of the Locals Criteria, standing arising from fear of an imminent harm is precluded here by plaintiff's own deposition testimony that he will never sign the required Registration and Rules form.  Defendants' undisputed evidence also reflects that the ASL requires any person wishing to use the facilities at the ASL to sign a Registration and Rules form.  Because plaintiff has unequivocally testified that he will never sign the required form, he will not be allowed to use the facilities at the ASL on that basis, irrespective of the Locals Criteria.  (See Defendants' Statement, UF #8; Docket No. 64, ¶¶ 5, 12; Docket No. 65-3 at 5 (plaintiff testified: "I just made it clear: No, I haven't signed the form,

I'm not going to sign the form.")).  Accordingly, plaintiff has failed to establish that he is in immediate danger of sustaining a direct injury as a result of application of the Locals Criteria.  See, e.g., Los Angeles v. Lyons, 461 U.S. 95, 102-03, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) ("Abstract injury is not enough.  The plaintiff must show that he has sustained or is immediately in danger or sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." (internal quotation marks omitted)).  Further, plaintiff's contention that "[o]ne to two dozen non-resident people are regularly unable to sleep at the ASL" (Docket No. 68 at 7) -- even if plaintiff could support this uncorroborated and conclusory assertion with factual evidence -- raises only a generalized grievance by a "concerned bystander," which is insufficient to create a case or controversy under Article III.  See Hollingsworth v. Perry, 133 S. Ct. 2652, 2662, 186 L. Ed. 2d 768 (2013) (a "'generalized grievance', no matter how sincere, is insufficient to confer standing").

Because the undisputed evidence here reflects that any injury that plaintiff suffered in being denied access to the ASL was not fairly traceable to the challenged Locals Criteria, plaintiff has failed to satisfy his burden to demonstrate Article III standing, and the Court is without jurisdiction to reach the merits of his remaining claim.  Accordingly, the Court recommends that the case be dismissed with prejudice for lack of jurisdiction.

/
/
/
/
/
/
/
/
/

**V.**

**RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the District Court issue an Order:  (1) approving and accepting this Third Report and Recommendation; (2) granting defendants' Motion for Summary Judgment; and (3) directing that Judgment be entered dismissing this action with prejudice.

DATED: May 6, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

13

1

**<u>NOTICE</u>**

2    Reports and Recommendations are not appealable to the Court of Appeals, but are subject

3 to the right of any party to file Objections as provided in the Local Rules Governing Duties of

4 Magistrate Judges, and review by the District Judge whose initials appear in the docket number.

5 No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until

6 entry of the Judgment of the District Court.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28